IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| JOHN ROBERT LOGAN,<br><br>    Plaintiff,<br><br>v.<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY and UNUM GROUP CORP.,<br><br>    Defendants. | Civil Action No. 1:24-cv-113 |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

COMES NOW, Plaintiff, John Robert Logan, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Long-Term Disability ("LTD") benefits due under a disability insurance policy governed by ERISA and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq., and the subject policy constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4. Plaintiff, John Robert Logan, (hereinafter "Plaintiff"), was at all relevant times, and is currently a resident of Sarnia, Ontario, Canada.

5. Defendant Paul Revere Life Insurance Company ("Paul Revere") is the underwriter of disability insurance policies numbers 0102644597 and 0102755854, and is the party obligated to pay benefits and to determine eligibility for LTD benefits under the Plans.

6. Paul Revere is an insurance company authorized to transact the business of insurance in this state and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

7. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Paul Revere.

8. Defendant Unum Group exercises significant control over the policies and actions of Defendant Paul Revere.

9. Defendant Unum Group is the employer of all persons who acted on behalf of Paul Revere.

10. Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

## FACTS

11. Plaintiff was employed by Osprey Informatics as the CEO.

12. LTD benefits under the Plans were funded by Paul Revere policies numbers 0102644597 and 0102755854.

13. Plaintiff is covered by the Policies that provide the LTD benefits at issue.

14. Plaintiff ceased work due to his disabling conditions and symptoms including valvular heart disease, bilateral knee osteoarthritis and cervical degenerative disc disease on April 30, 2019 after he had reduced his work starting on April 1, 2019, while covered under the Plans.

15. Plaintiff has been and continues to be disabled as defined by the provisions of the Plans.

16. Plaintiff timely filed an application for LTD benefits under the Plans on or around May 14, 2019.

17. Plaintiff underwent open heart surgery on or around June 19, 2019.

18. Defendants approved Plaintiff's application on September 27, 2019, and paid benefits until March 12, 2021.

19. While the claim was approved the premiums under the policies were waived through a waiver of premium provision in the policies.

20. As of March 12, 2021, Defendants denied Plaintiff's claims for ongoing LTD benefits and Waiver of Premium benefits, stating that he could perform his own occupation despite his medical conditions.

21. Defendant based its decision on its internal file reviewing doctor's opinion that Plaintiff is able to perform his own occupation as a CEO.

22. Plaintiff submitted a response to Defendants on March 18, 2021 and June 30, 2021, stating that Defendant had not properly identified his occupation.

23. Defendant upheld its denial of benefits on September 20, 2021, in which is agreed that Plaintiff is able to perform his occupational duties as a CEO. Defendant stated that it is reasonable for a CEO to work in exce3ss of 40 hours per week and that sufficient stamina and endurance are required to complete tasks that exceed 40 hours per week. Yet, Defendant upheld its denial of benefits by finding that Plaintiff is capable of performing the demanding occupation of CEO.

24. Plaintiff appealed on May 12, 2022, and submitted in support of his claim medical records, a declaration, a functional capacity evaluation, and a vocational evaluation report by Bentley Hankins.

25. The functional capacity evaluation was performed by Ryan Montemurro, BMR OT, who found that Plaintiff's residual functional capacity includes the ability to do the following: lift up to 10 to 15 pounds occasionally (and 15 to 25 pounds rarely) and carry up to 15 pounds occasionally (and 20 pounds rarely); flex the neck or reach above shoulder height occasionally; reach forward or laterally occasionally to frequently; bend/stoop occasionally; kneel and squat/crouch rarely; walk and climb stairs occasionally; balance occasionally to frequently; sit occasionally to frequently; stand occasionally; finger (fine motor dexterity) and handle (medium motor dexterity) frequently.

26. Mr. Montemurro noted that Plaintiff would have difficulty with prolonged neck flexion, whether sitting or standing and that Plaintiff is restricted to only part-time activity.

27. Dr. Bentley Hankins reviewed the evidence and prepared a vocational evaluation report. Dr. Hankins concluded that Plaintiff meets the policies' definition of residual disability as he is only able to work at a sedentary to light exertional activity on a part-time basis. He also concluded that Plaintiff is unable to consistently engage in full time work activity, particularly

4

Case 1:24-cv-00113-CEA-CHS    Document 1    Filed 03/11/24    Page 4 of 9    PageID #: 4

int eh highly stressful position of a president and CEO that, requires extensive travel and 60 hour work weeks.

28. On June 15, 2022, Unum sent to Plaintiff a copy of its internal claim notes including a vocational report, a nurse medical review, and a review by a file reviewing doctor, Dr. Greenstein.

29. Plaintiff responded on June 30, 2022, by submitting a sworn declaration of Plaintiff and medical records.

30. Defendant upheld its denial on July 11, 2022 by stating that they reviewed the evidence and concluded that Plaintiff is able to perform his own occupation as a CEO.

31. Plaintiff appealed the denial of benefits on March 30, 2023, and submitted medical records and a letter from treating provider, Dr. Naidu, in support of his disability claims.

32. Dr. Naidu explained in her letter that Plaintiff was a high achieving member in the corporate world and worked as a CEO, but his osteoarthritis in his knees has progressed to where he had to have a total knee replacement in June 2022. She explained that he continues to have pain and swelling in his leg and continues to require analgesia and physiotherapy.

33. Dr. Naidu also stated that Plaintiff's medical issues and side effects of his life long medication means that he cannot function in his previous occupation as a CEO due to the extreme mental and physical stressors required.

34. On May 11, 2023, Plaintiff submitted medical records to Defendant.

35. On June 12, 2023, Plaintiff submitted additional medical records and MRI images to Defendant.

36. Om July 28, 2023, Plaintiff submitted more medical records to Defendant.

37. On August 3, 2023, Defendant stated that it would be setting up a medical examination of Plaintiff.

38. On August 18, 2023, Defendant stats that it's vendor would be setting up the medical examination.

39. On September 14, 2023, Defendant states again that its vendor, ECN, will be setting up a medical examination.

40. On October 13, 2023, Unum again states that ECN is setting up a medical examination.

41. On October 25, 2023, ECN finally set up a medical examination of Plaintiff.

42. After several letters back and forth, ECN and Plaintiff agreed to a date for the medical examination.

43. The medical examination took place on December 22, 2023.

44. On January 5, 2024, Defendant stated that it was waiting on the medical examination report to make a decision.

45. On January 30, 2024, Plaintiff requested a copy of the medical examination report before a decision is issued.

46. On February 1, 2024, Defendant issued a denial stating that Plaintiff can perform his own occupation as a CEO.

47. The IME report was not sent to Plaintiff to review before a decision was made.

48. Defendant's February 1, 2024, letter confirmed that Plaintiff is able to file suit.

49. Plaintiff has exhausted any required administrative remedies with respect to the LTD claims.

6

Case 1:24-cv-00113-CEA-CHS   Document 1   Filed 03/11/24   Page 6 of 9   PageID #: 6

50. The policies do not contain a grant of discretion; thus, the claims will be reviewed under a *de novo* standard of review.

51. The entities that made the decisions to deny benefits would pay any benefits due out of their own funds.

52. The entities that made the decisions to deny benefits were under a perpetual conflict of interest because the benefits would have been paid out of their own funds.

53. The entities that made the decisions to deny benefits allowed their concern over their own funds to influence their decision-making.

54. The Defendants' decision to deny benefits was wrong under the terms of the Plan and under ERISA.

## FIRST CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST THE DEFENDANT
## PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

55. Under the terms of the Plan, Defendants agreed to provide Plaintiff with LTD benefits and waive premiums in the event that Plaintiff became disabled as defined by the Plan.

56. Plaintiff is disabled and entitled to benefits and waived premiums under the terms of the Plan.

57. Defendants failed to provide benefits due under the terms of the Plan, and required payment of premiums, and these denials of benefits to Plaintiff constitute breaches of the Plan.

58. The decisions to terminate benefits and deny waiver of premiums were wrong under the terms of the Plan.

59. The decisions to deny benefits were not supported by substantial evidence in the record.

60. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled to under the Plan and the premiums he paid to maintain the policies.

61. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief in this case:

**On Plaintiff's First Cause of Action**:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which he was entitled through date of judgment, all premiums he paid since Unum terminated his claim that should have been waived under the policy, and for any other unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

5. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with

any other employment benefits to which he would be entitled pursuant to a finding that he is disabled under the Plan or under any other employee welfare benefit plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this court deems just and proper.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 11th day of March, 2024.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: */s Hudson T. Ellis*
Hudson T. Ellis (BPR #28330)
Audrey C. Dolmovich (BRP #035972)
414 McCallie Avenue
Chattanooga TN 37402
(423) 634-2506
FAX: (423) 634-2505